Today's cases will be called as previously announced. The times will be as allotted to counsel. The first case today is number 181405 M-L-CFC 2007-6 Puerto Rico Properties, LLC versus BPP Retail Properties, LLC. Good morning. May it please the Court, I would like to reserve three minutes for reply. My name is Alfredo Fernandez and I represent Apple and BPP Retail Properties, Inc. in this case. As you know, receivership is an extraordinary remedy in equity. And the magistrate judge in this case, in granting this remedy in equity, decided to ignore the equities. And that constituted an abuse of discretion. With respect to the first error that we pointed out in our brief regarding the discretion or the authority of the magistrate judge to entertain this type of remedy, we submit our argument on the briefs. Because I believe it's important to focus on the second error. And that is that the magistrate judge abused its discretion by not following the leading case in this circuit, the Turago Shopping Center case, a case in which Judge Torruegas was the district court judge. And the last expression of this court regarding receiverships. In that case, the district court not only held an evidentiary hearing, but also entertained and decided based on the equities. Let me ask you something. Did you ever challenge in the district court the default? Yes. The default was not only challenged, but there was an affidavit or a statement under penalty of perjury submitted by my client contesting the alleged default. And that statement not only contested the amounts that is claimed as a default, but also challenged the fact that in this case, despite the fact that the loan matured in 2012, I think it's important for the court to know that the statute of limitations in Puerto Rico and the Puerto Rico Commerce Code is three years to make a claim to collect on a commercial loan. And the complaint in this case was filed in 2017, five years after the loan had matured. So, but with respect to that, Your Honor, it's also very relevant for purposes of this case to understand and the court to understand that the magistrate judge not only was presented with conflicted evidence as to what was the amount due under the loan, but decided to go into the merits or into the contents of the two unsigned payoff statements that were submitted by the lender in support of its motion for a receiver and did himself a calculation of what he thought was the amount due under the loan. And to BPP and to Appel, that also constituted an abuse of discretion. This is an extraordinary case based on the facts. This is a case where no evidence or allegation of malfeasance, fraud, imminent danger to the properties was even presented by the lender. This was a case in which a magistrate judge essentially said, just because the mortgages, which are collateral to a loan, which is not the principal obligation that it's a loan agreement, had some language in some of its needed not be considered. The conflicting factual evidence presented before the magistrate judge at least required the holding of a hearing. All of the cases, including the Torao Shopping Center case in the district court, that have been cited by Appel and were cited by the magistrate judge, the district court held a hearing because of the extraordinary nature of the receivership. Put it in this way. In this case, my client, Appel, has been dispossessed of its six shopping centers based on a contested allegation of what the amounts are due under a loan and without any consideration of any imminent danger. My client has been running and operating the shopping centers after 2012 with no complaints from anybody. Let me ask you this question. If the court had the equitable power to appoint a receiver, whether it was in the contractual language or not, then what is the value of having, what work does having that language in the contract do? Does it, do you give it any weight at all? There is weight, but the Torao Shopping Center case from this circuit had precisely the same language. And there was an uncontested issue regarding the default of the debtor. And in that case, this court decided on the equities. And the magistrate judge instead decided in our case to give passing reference in a footnote to the Torao Shopping Center case and give more weight to the concurrent footnote in Torao Shopping Center. So what weight should the language be given? So if you have a situation where there is no contractual language of that nature, we know what a court would do when a receiver, receivership is requested. Here we've got the language. Is it a plus factor? Does it shift the burden? What is the point of it if you say it's not sufficient in and of itself for the appointment of a receiver? It has some weight. I'm trying to figure out what the weight is. But the weight should not be that to the effect of ignoring the equities. The fact that a contract provides, there's contract language for the appointment of a receiver, does not lift from the creditor the burden of establishing a prima facie event of default and that the equities or the circumstances are of such extraordinary nature that the court's equity power should be asked from in order to issue a ruling. Could the size of the default be relevant to the equitable inquiry? To us, that's irrelevant. I think because at the end of the day, what's important is what is... Just in general, wouldn't the size of the default be relevant to the equitable inquiry? I don't think so. Never? I don't think so. It has some weight, just like... So then why wouldn't one way to think about it would be what the parties agreed to was that they're stipulating almost like a liquidity of damages or something, that the size of this default, if it can be shown, is such that it makes sense then to have receivership. So they're in that agreement, so then that's what it is. But the size of the default per se shouldn't be what the court should consider in exercising this equitable power. Because at the end, receivership requires something to be happening with the properties, irrespective of the size of the default. Put it in this way... Can I... Just a prior question. In just reading your brief, are you making an Article 3 challenge to the magistrate's authority to do what it did? What we're saying is that the magistrate judge, in entertaining the receivership, was entertaining what was in nature an injunction, which... I understand that. That's the statutory argument. That's right. We're not challenging the Article 3. We're just challenging the discretion of... So you concede if it's not an injunction, there's no... If there's not an injunction, if it's not an injunction, the magistrate judge, under the statute, had the authority to entertain... But then isn't there still an Article 3 question whether the magistrate can have that power? Well, the... It is an Article 3 question. What we understand is that this injunction of the magistrate judge, per se, did not have that authority to make that final decision on the parties' obligation regarding the receivership. If I may, I know time is running out. Time has run out, but you've reserved some time. All right. Good morning. May it please the Court, Joan Schlump Peters on behalf of Plaintiff Lender. Contrary to what Brother Counsel just stated in response to Judge Turwaya's question regarding default, the borrower never denied default, despite submitting an affidavit from its principal and multiple briefs. This was actually found by the magistrate judge in its opinion. Instead... So the evidence of default is that in the terms of the loan agreement, the loan had a maturity date of February 2012. The borrower did not pay that amount on or before the maturity date, and that constituted an event of default under the loan documents. These facts are undisputed, and the magistrate judge issued its opinion based on those facts as well as various pieces of evidence, including affidavits from lenders' special servicer, payoff statements indicating that the balance owed on the loan was over $130 million, and a notice of default letter sent by lender to borrower. Since the borrower has not and cannot deny default, instead its only argument is that the loan might be current because of debt service payments from the lockbox account. But those payments only went to interest, and it did not affect the principal. This was an interest-only loan, and thus the payments, any debt service payments, only reduced the interest. So the allegation that the loan might be quote-unquote current is actually not relevant to and does not impact in any way the court's finding that there was default. Moreover, the payoff statements actually deduct and reflect any debt service payments as well as the amounts in the lockbox account. Therefore, it's irrefutable that the balance owed on the loan is over $130 million, and that cannot be denied by the borrower and has not been denied. So can we talk about receiverships for a minute? Yes. It's been described as sort of a preliminary ancillary proceeding, and yet I have to tell you I can't remember ever being involved in a receivership where the original owners of the company or the property got the property back. It seems to be a rather final, dramatic step. Would you disagree with that statement? Well, here, where the likelihood of foreclosure I believe is very high and basically inevitable, it is the first step towards losing that property, yes. However, the case law states that where there is a contractual right and the parties agreed ex ante that the receiver could be put in place upon default regardless of the equities, and here the borrower actually waived any right to object to the appointment of a receiver by the terms of the loan documents. The case law actually says it's not that extreme a remedy when there is this clear contractual right. However, Your Honor, I would also state that even if this court were to decide that in addition to the contractual right, the equities should be considered, they were considered. The magistrate judge actually found that lender had presented evidence that may entitle it to an appointment of a receiver under the equitable factors. The court chose to address it to base this decision on the strong contractual right and the clear evidence of default. But your earlier statement this morning that this is sort of a, I think you said first step, but this is a step toward what appears to be real finality, and you said there was an inevitability, I think. I take it that's not a concession in terms of finality. That's actually part of your equitable argument that the die is cast here. Yes. Well, I would say this, Your Honor, the die is cast, but also the point of the receiver is to preserve the property. Lender presented evidence of neglect, lack of maintenance, low occupancy. There is sufficient evidence just under the equities in the record to support an appointment of receiver, and it's necessary because the loan is under-collateralized by $76 million at this point. This is the lender's collateral, and it's diminishing in value on a daily basis. On the Article III issue, do you know of any authority addressing whether magistrates have this power? I know there's statutory authority about how to read the statute and whether it's an injunction, but the statute can't resolve the constitutional question of whether a magistrate can have this authority. It seems like a fairly significant power to have a non-Article III entity exercising. Okay, so a magistrate under 28 U.S.C. Section 636, it specifically distinguishes between injunctive relief. Yes, that's the statute. Yes. But the statute can't decide what the scope of the Article III power is. So is there any authority that says a magistrate can exercise this kind of power that addresses the constitutional question? Because there are certain things magistrates constitutionally cannot do, I would have thought. Yes, and the statute does set forth specifically what a magistrate judge cannot do. So what the distinction is, is whether or not it is a dispositive versus a non-dispositive matter. And what the case law has held... But suppose a preliminary injunction is under the statute, a magistrate cannot do it. If the statute said a magistrate can do it, I think there would be a pretty serious Article III problem with allowing a magistrate to issue a preliminary injunction. And I guess I'm asking the same question. Why isn't there an Article III problem with allowing a magistrate to exercise this kind of authority over private property? Well, Your Honor, I would tend that there is a difference between injunctive relief and appointment of a receiver. As a constitutional matter? I believe so. What would be that distinction? So the case law makes that distinction between the injunctive relief and the appointment of receiver, whereas an injunctive relief is ruling on a party's rights, whereas the receivership is not dispositive of the party's rights, it's only to preserve property. Is a preliminary injunction dispositive of the rights? Yes, I believe it is dispositive of rights. Preliminarily? Preliminarily, yes. And the receivership is preliminarily dispositive of who controls the asset, right? Well, it's to preserve the property. So, technically, the owner is not losing the property. It's only that a receiver that's appointed by the court, an independent receiver, not the lender, a receiver is being put into place to preserve the lender's interest. I see. So it's between the parties' rights. Yes. So, and I would say this, Your Honor, and we did extensive research, there is no legal authority stating that a magistrate judge cannot enter the order of appointment of receiver. Yeah, no, I understand that, but this is just all statutory as far as I can tell. Yes. And it doesn't seem like anyone's considered the constitutional question. That might be correct, Your Honor, yes. So, it's based on the statute, the rules of civil procedure, and also the case law interpreting the statute and the rules of civil procedure. There is many cases that we cited where the magistrate judge was given that authority and entered the order appointing the receiver. So, I think we do agree, these are my words, not yours, but this sort of unhorsing of one of the parties of its property and putting it under the authority of an officer of the court, it's really an arm of the court, it does seem to me to be a really dramatic step. And I agree with your earlier sort of assessment that in this case, as I think in most cases, it's the beginning of the end of the line for that particular party. Why should that be as a matter of contractual entitlement and that a court shouldn't have to look at anything else? In other words, the court, it seems to me, becomes sort of put in service of one of the two parties at that point. Well, Your Honor, I would say that here where the borrower agrees beforehand that if it defaults on the loan, it will not object to the appointment of receiver. Okay, but so can the court say no? Could the court say no, yes. On what basis? The court has the discretion to say yes or no. So what would the court look at? If there's a contractual entitlement, what else does the court look at? How does that work? Well, I would contend, Your Honor, that the court does not have to look at anything beyond clear evidence of default and the contractual language. However, in this particular case, we presented ample evidence of the equities and the court did look at them. But if you didn't have the equities, you're saying all it has to look at is the contractual language and the fact of the default. But you say there's discretion. So one court could appoint a receiver. Another court could say, no, I'm not going to. And both would be within their discretion on exactly the same facts. That's a good question, Your Honor. Yes, I think there is a wide latitude of discretion given to the district court to consider this. However, I think the precedent, the recent precedent in the district court of Maine and Massachusetts has been very clear that the court can consider that an appointment of a receiver is warranted based solely on clear contractual right. And they do look to the language in the loan document. So some language is stronger than others. Isn't there language in this document that then goes on to say, and the receiver will divest or do various things with the property as the lender directs? Language to that effect. I thought there was language to that effect. And I was wondering, what's the court supposed to do with that since a receiver is part of the court? So, Your Honor, the court, which in this case has not yet put into place the order, the court can specify the exact powers that the receiver would have. And the court is overseeing. So you're not arguing that what, although there may or may not be specific contractual language giving the lender certain powers over the receiver, you're not arguing for that at this point? No. Only arguing that. I just have one last, this goes to a question Chief Judge Howard asked about what effect we give the language of the contract. If I follow you, you're suggesting that notwithstanding the contractual language, the magistrate judge or, if it wasn't a magistrate judge, a district court, would be entitled to deny the receivership on equitable grounds. If there was no contract? No. Even in the face of the contractual language, you're not denying that the judge could deny the receivership on equitable grounds. I agree. Does that mean that the import, one possible import of the language then is that what the other side has done is forfeited their ability by that contractual language to challenge on equitable grounds the granting of the receivership. Do you follow? Yes. So in other words, it may be that the district court has to make an equitable, can make an equitable judgment not to grant the receivership. But the effect of the contract is when one party says, if there's a default, you can have a receivership, that that just amounts to a waiver of their right to then challenge the granting of a receivership on equitable grounds. Yes. Here the borrowers specifically agreed not to oppose the appointment of a receiver. So did you make that argument? By agreeing to that contractual language, they waived their right to now contest whether there was an equitable basis for the receivership? We did make that argument that they waived their right to object. However, but we also based it on the strong language of the mortgage deeds, which the court found was stronger than in other cases. As the district court held in its opinion, the borrower entered into a contract and has to live with the consequences of that contract. You cited Maine and Massachusetts law. Why is that relevant here? Isn't this a contract that should be interpreted by Puerto Rico law? No. So for the appointment of a receiver, federal law governs the appointment of a receiver. You do not look to state law. So when I referred to District of Maine and District of Massachusetts cases, they were relying on First Circuit cases and federal law, not any state law. I would like to ask the parties if you would be willing to give us some supplemental briefing on this Article 3 question that Judge Barron has raised. That is whether a magistrate judge is prevented by, is empowered under Article 3 to establish a receivership of property or an organization. So let me suggest 10 pages. How long do you think you would need for this? I can just give you a time if you want. Is two weeks long enough? Two weeks would be. All right. So on the 10 pages, if you need more, just ask for it. All right. Yes. Excuse me, but going back to my question, receivership law may be federal law, but interpretation of this contract that was assumed would be Puerto Rico law. But there is, you wouldn't look to Puerto Rico law, because there's no issue of interpreting the contract, per se, here based on Puerto Rico law. With respect to the waiver question, there would be. As to whether or not the waiver. The right to challenge the failure to consider the equitable basis for the receivership. If you're making an argument under the contract, they waive that. Then the question is, well, does the contract actually waive that? And if that's a question of Puerto Rico law, then the fact that Puerto Rico law might read that contractual language to assume that you have to do an equitable analysis, then the waiver argument would be pretty weak. And, excuse me, adding to that, this is a commercial code situation, isn't it? Rather than civil code? I believe so, yes. So? I'm not sure, Your Honor. This contract would be interpreted under the Puerto Rico commercial code? Yes, but the appointment of receiver is governed by federal law. I'm not asking about that anymore. All right, thank you. Thank you, Your Honors. If I may, please, Your Court. Three aspects here, procedurally, that are important with respect to the staging which the case was when the magistrate judge issued the order. There was no operative complaint even filed. The court had just denied a motion to dismiss for lack of diversity jurisdiction, and in order to save the federal court's jurisdiction, had ordered the plaintiff to amend the complaint. That amended complaint had not even been filed when the magistrate judge issued the order for the receivership. So it didn't have even a developed record on the pleadings of the parties, and that's important because under the Puerto Rico commerce code, right after the amended complaint was filed, my client not only answered and counterclaimed, but filed a motion to dismiss because under the Puerto Rico commerce code, commercial loans, the statute of limitations to collect on commercial loans expires three years after maturity. And in this case, the complaint was filed five years after maturity. So there's an issue as to the validity of the underlying loan agreement in which APELE bases its contention that the receiver should be appointed. The other issue that is extremely important in this case is that the receivership language appears in the mortgage deeds. And under Puerto Rico law, which is the law that needs to be considered to interpret that contract, mortgages are accessory to a principal obligation. If the principal obligation, which is the loan, expired because the statute of limitations expired, it's no longer valid, the mortgages are no longer valid and the rights under a mortgage cannot be self-executionary. So in that sense, the aspect of the application interpretation of the contracts under Puerto Rico is a very important issue in this case. The other aspect that is important to point out is that the case law that the lender here has relied on and the magistrate judge relied on, it's two unpublished, one unpublished order by a magistrate judge and one unpublished recommendation by a magistrate judge, one in Maine and one in Massachusetts. And ignored the two-hour shopping center case, which is the case law from this circuit that considered the equities. And in the cases of those two magistrate judges where they appointed the receiver, a hearing was held. And in this case, with an undeveloped record on the pleadings, the magistrate judge decided not to hold a hearing. And holding a hearing is something both parties agreed. When the motion to appoint a receiver was filed, even the lender requested and filed on docket 10 in the district court an urgent hearing to consider the motion for appointing a receiver. So they cannot come here and argue about waiver, contractual waiver, when they were requesting a hearing before the magistrate judge precisely to consider the appointment of a receiver. So those are... Well, why can't... I don't think that follows. Why can't they argue that you waive the right to make the arguments that you're making now by the contractor? Because... First of all, because it's not the contract, it's the mortgage which is accessory to the contract. So it's... Their argument depends on an existing valid loan agreement in place. And that loan agreement had to be on default. And the default had to be established prima facie. So, you know, if the argument presented by the lender was that because the mortgage language provided for the appointment of a receiver, somehow my client has better way arguing the equities, the issue here is not one of waiver, is one of whether the principal obligation is valid or not. And that waiver under Puerto Rico law needed to be known, consented, expressed as to the extent of the receivership. And if you look into the language of the mortgage cited by the lender, the language in the mortgage has said, and I ask you to pay close attention to that language, it provides in the mortgage that the lender can do all of those things that are cited in the motion. And then says, and in addition, can request the appointment of a receiver for purposes of selling the property and for any other purpose allowed by law. So this is kind of like a post-judgment receivership provision. And that's why there's a limitation in the mortgage. Because once the original loan agreement is defaulted and that's so declared by the court, the mortgage can be foreclosed. And under the mortgage, lenders not necessarily want to take possession title to the property. They reserve the right to appoint a receiver for multiple reasons not to assume liability. So you should look into this receivership provision, contractual provision as one in an accessory contract that instead of having an express provision as to the rights of that receiver and the rights that that receiver could exercise, it's more so in the terms of language of a post-judgment receivership after foreclosure. Do you have any final point? No. That will be it. Okay, great.